FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

97 MAR 31 PM 4:39

U.S. DISTRICT COURT
N.D. OF ALABAMA

RALPH SMITH,

    Plaintiff,

v.

FIRST NATIONAL BANK OF JASPER,

    Defendant.

CASE NO. CV 96-B-1684-J

ENTERED

MAR 3 1 1997

## MEMORANDUM OPINION

This matter is before the court on plaintiff's Motion to Remand. Upon consideration of the record, the submissions of the parties, the relevant law, and the argument of counsel, the court is of the opinion that plaintiff's motion is due to be granted.

## FACTUAL SUMMARY

On or around January 31, 1991, plaintiff purchased an automobile from Jim Burke Motors, Inc., d\b\a Jim Burke Honda ("Jim Burke"). (Def.'s Answer ¶ 1). In conjunction with the automobile purchase, plaintiff executed a "Buyer's Order," and a "retail sales contract and security agreement." (Id. at ¶¶ 1 and 2.) The Buyer's Order provides that the contract between the plaintiff and Jim Burke consists of the Buyer's Order and the retail sales contract and security agreement. (Id. at ¶ 2.)

Following plaintiff's automobile purchase and execution of the pertinent documents, Jim Burke assigned the contract to defendant First National Bank of Jasper ("First National" or "defendant"). (Id. at ¶ 2.) The assignment by Jim Burke to First National expressly



provides that: "Seller gives assignee full power, either in its own name or in seller's name, to take all legal or other actions which seller could have taken under this contract." (*Id.*)

Under the retail sales contract and security agreement, plaintiff agreed to purchase insurance on the automobile against such risks and in such amounts as may be reasonably required by the lender. (*Id.* at ¶ 3.) Plaintiff also agreed that if he failed to obtain or maintain the requested insurance, or failed to name the lender as the loss payee, that such insurance could be purchased for the purpose of securing the interest of the lender in the collateral. (*Id.*) In conjunction with such an insurance purchase, the contract provides: "The cost of such insurance will be added to the secured obligation, will be immediately due, and will accrue interest at the annual percentage rate agreed to . . ." in the contract. (*Id.*)

After executing the contract, plaintiff purportedly defaulted on his obligation to procure insurance relating to the lender's interest in the automobile. (*Id.* at ¶ 4.) Following notice to the plaintiff, and plaintiff's continued failure to obtain the required insurance, First National procured a vendor's single interest insurance policy[1] to protect its interest as a lender. (*Id.*) The premium for this policy was added to and became a part of plaintiff's obligations under the retail sales contract and security agreement. (*Id.*)

On January 25, 1996, plaintiff filed suit against First National in the Circuit Court of Walker County, Alabama, alleging claims of fraud, and breach of fiduciary duty in connection

---

[1] Force-placed or vendor's single interest insurance is purchased by a lender, and the cost thereof is charged to the borrower's account, when a borrower fails to comply with his contractual obligation to insure the collateral for the loan against loss or damage. This insurance protects only the interests of the lender and does not insure the borrower's "equity" in the collateral. (Def.'s Not. of Removal at 2 n.1.)

2

with the purchase of the vendor's single interest insurance by First National. (Compl. at 1-3.) Additionally, plaintiff requested that the court certify the action as a class action as provided by the Alabama Rules of Civil Procedure. (*Id.* at 3.)

In his complaint, plaintiff alleges, inter alia, that:

The Defendants defrauded Plaintiff, to wit:

A. By suppressing from the Plaintiff the material fact that the subject policy would pay only to First National and not to the Plaintiff;

B. By suppressing from the Plaintiff the material fact that only First National's debt, and not the Plaintiff's equity, were insured;

C. By unilaterally changing the terms of the original contract without the Plaintiff's consent; and

D. By suppressing from the Plaintiff the material fact that First National earned a substantial commission on the sale of this insurance.

In response to plaintiff's complaint, defendant filed a motion to dismiss, or, in the alternative, for a more definite statement. On April 3, 1996, the state court judge presiding over the action granted defendant's motion for a more definite statement. Without filing a responsive pleading, on June 10, 1996, plaintiff's counsel wrote to defendant and demanded that First National provide a refund to plaintiff and the putative class members as required by ALA. CODE § 5-19-19. Section 5-19-19 is entitled "Excess finance charges . . . ." This provision requires, inter alia, that a debtor make demand upon a creditor for a finance charge in excess of the amount authorized by law. *See* ALA. CODE § 5-19-19(a)(1)(i).

On June 28, 1996, First National filed a notice of removal pursuant to 28 U.S.C. § 1441, in which it maintained that this court has original jurisdiction of this action under 28

3

U.S.C. § 1331. (Def.'s Not. of Removal ¶ 8.) Specifically, First National contends that while plaintiff attempts to recover solely upon state law grounds, plaintiff's allegations amount to a claim that First National charged excessive interest in violation of § 85 of National Bank Act of 1864 ("NBA"), 12 U.S.C. §§ 21-200 (1994), and because the NBA preempts any and all state law claims and remedies for excessive interest, this case should remain in federal court. (*Id.* at ¶¶ 4, 5, and 6.) Presently before the court is plaintiff's motion to remand.

Defendant argues that plaintiff's claims under the Alabama Mini-Code, Ala. Code § 5-19-19, are completely preempted by provisions of the National Bank Act, specifically 12 U.S.C. §§ 85-86. This contention is without merit. As the former Fifth Circuit has stated, "[i]t is a fundamental principle of law that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed." *In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980), *cert. denied*, 450 U.S. 949 (1981). Although *Carter* was more concerned with a plaintiff amending his or her complaint in an attempt to destroy federal jurisdiction, the principle that arises from that case is applicable here. That principle is that federal jurisdiction may arise under the complete preemption doctrine only if federal law completely preempts a claim stated in the plaintiff's complaint.[2] Here, the Mini-Code allegations were not stated in the complaint. They were

---

[2] This conclusion is consistent with the notion of the "well-pleaded complaint." Under that rule, a federal cause of action must be stated on the face of the complaint before it is removable on the basis of federal question jurisdiction. Although complete preemption is an exception to the well-pleaded complaint rule, requiring the claim that is allegedly completely preempted to be stated on the face of the plaintiff's complaint is consistent with the principle behind the well-pleaded complaint rule.

4

included in the June 10, 1996, letter to defendant's counsel. Thus, at present, defendant's argument concerning complete preemption is not applicable.[3]

As the complaint now stands, there is no claim for excessive finance charges. Plaintiff has not been granted leave to amend his complaint to state a claim for excessive finance charges. If however, plaintiff is permitted to amend his complaint in state court to allege a violation of ALA. CODE § 5-19-19,[4] the court would anticipate a second removal by

---

[3] Defendant essentially concedes that none of the claims stated in plaintiff's complaint give rise to jurisdiction under the complete preemption doctrine because defendant argues that the action did not become removable until the June 10, 1996, letter demanding refund of excess interest under the Alabama Mini-Code.

[4] While leaving that issue to the state court judge, the court would note that to contend that a premium paid for vendor's single interest insurance is "interest" appears to have no support in the facts or current law. Although the term "interest" is not defined in the NBA, in *Smiley v. Citibank (South Dakota) N.A.*, 116 S. Ct. 1730 (1996), the Supreme Court held that the Comptroller of the Currency's definition of the term interest is reasonable and entitled to the customary deference afforded agency regulations under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984), *reh'g denied*, 468 U.S. 1227 (1984). Under the Comptroller's definition interest is defined as follows:

> The term 'interest' as used in 12 U.S.C. § 85 includes any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees connected with credit extension or availability: numerical periodic rates, late fees, not sufficient funds (NSF) fees, overlimit fees, annual fees, cash advance fees, and membership fees. **It does not ordinarily include** appraisal fees, **premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit**, finders' fees, fees for document preparation or notarization, or fees incurred to obtain credit reports.

61 Fed. Reg. 4869 (to be codified in C.F.R. § 7.4001(a)) (emphasis added).

defendant. The court declines, at this time, to revisit whether such a claim in this case would fit within the parameters of the National Bank Act and assuming it did, whether the National Bank Act would completely preempt plaintiff's state law claims.

Based on the allegations in the complaint, the court has determined that it lacks subject matter jurisdiction. *See Sunburst Bank v. Summit Acceptance Corp.*, 878 F. Supp. 77 (S.D. Miss. 1995) (holding no federal jurisdiction when "other paper" under 28 U.S.C. § 1446(b) which triggered removal based on claims not pled in the complaint). Accordingly, an Order granting plaintiff's Motion to Remand will be entered contemporaneously with this opinion.

**DONE** this 31st day of March, 1997.

*[signature: Sharon Lovelace Blackburn]*
**SHARON LOVELACE BLACKBURN**
United States District Judge